## Young *et al.* *versus* Lloyd and Wife.

1. Lloyd sold Young standing timber on No. 5821, having previously pointed out the lines. Some of the timber cut by Young according to this line, proved to be on 5822, owned by Herdic. Young drove the logs to Williamsport. In a replevin by Herdic, Young gave a property-bond and

[Young *v.* Lloyd.]

retained the logs. Herdic recovered the value of the logs at Williamsport less the cost of cutting and driving them there. In an action by Lloyd for logs cut on his land, Young could set off only the *costs* in the replevin.

2. Young could not set off the profit he could have made on the logs.

3. A contract to deliver growing timber trees on the land, to be cut and taken away by the purchaser, has not in view the price at a distant market.

March 29th 1870. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Error to the Court of Common Pleas of *Lycoming county :* No. 358, to January Term 1870.

This was an action of assumpsit by Clinton Lloyd and wife against Jacob S. Young and others trading as Young, Finley & Co.

The cause of action was the price of certain growing timber on tract No. 5821 in Potter county, belonging to the plaintiffs. The claim was under a contract between the plaintiffs of the first part and the defendant of the second part, dated June 27th 1863, by which "the said party of the first part hereby agrees to sell to the party of the second part all the white-pine timber growing upon * * * 5821, embracing about 1000 acres, and the said party of the second part agrees to purchase and take off said land, as hereinafter specified, all the white-pine timber that will make merchantable lumber, such as a prudent man would take off his own land, * * * and to pay for the timber upon said land the sum of $2 per thousand feet, board measure. * * * It is further agreed that said lumber shall be measured before its removal from said land by some suitable scaler, to be chosen by the parties and paid for by the said party of the second part." * * *

About the time of the negotiation and the purchase of the timber, Lloyd went with Young, one of the defendants, and pointed out to him the line of the tract, which had been run and marked by Jacob Brown, a surveyor. Young having examined within the line pointed out, and having reported favorably to his partners, the contract was entered into. The defendants having proceeded to cut the timber according to the line shown by Lloyd, it was ascertained that they had cut about twenty rods on tract No. 5822, adjoining on the south, and belonging to Herdic, Lentz & Whites. The defendants drove the logs, amounting to 1,008,378 feet, to the Williamsport boom, and Herdic & Co. issued a replevin for them. Lloyd directed the defendants to give a claim property-bond, and defend the suit. Lloyd, who was a lawyer, assisted in the defence.

At that trial the court instructed the jury "to estimate the value on the stump at the time and place where the timber was cut." The verdict was for $4306.75. Herdic & Co. removed the case to the Supreme Court, assigning this instruction for error. The Supreme Court (Herdic *v.* Young, 5 P. F. Smith 170) decided that the measure of damages was "the value of the logs in the

[Young v. Lloyd.]

boom, less the cost of cutting, hauling and driving to the boom."
The judgment was therefore reversed.    On a second trial the ver-
dict was for Herdic & Co., for $7351.04.

On this trial the plaintiffs claimed to be paid for 2,333,473 feet
of timber, which excluded the timber the value of which had been
recovered in the replevin.   The defendants asked to set off against
the plaintiffs' claim, the difference between the price they were to
pay for the timber and the amount recovered against them by
Herdic & Co.

The parties submitted no points.

The court (Gamble, P. J.), after recapitulating the facts,
charged :—

* * * "These material facts are not in dispute between the
parties, their difference being as to their legal rights.    The court
will therefore have to assume the responsibility of controlling
your verdict and determining the legal rights of the parties with-
out time for any other consideration than the arguments of coun-
sel and authorities adduced have afforded.    The first question to
be determined relates to the nature or character of this contract.
Whether the rules of law applicable to a sale of real estate or
easement in lands are to measure or control the rights of the par-
ties or the rules of law applicable to a sale of chattels.    In the
one case the remedy upon failure of title depends upon an express
warranty, in the other it may rest upon an implied warranty,
which is a legal concomitant of a sale of chattels.    Timber trees
and other spontaneous productions of the soil are so attached to
and connected with the land as to constitute their part of it and
pass by a sale or conveyance of land without being mentioned.
Yet a sale of timber to be severed from the land and then mea-
sured to ascertain the quantity, before the price is payable, seems
to contemplate a change of its original character by the terms of
the contract and the mutual agreement of the parties.    Such
being our impressions of this case, and entertaining an opinion
upon another branch of the case which supersedes the importance
of this point, we hold for the present that such an implied war-
ranty of title attaches to this sale as would render the vendors
liable to answer in damages upon a failure of title.    The next
question then is, what is the proper measure of damages ?    The
principle which measures damages at common law is that of giving
compensation for the injury sustained.    But in many instances
the law lessens this compensation, leaving upon the injured party
a part of the loss, and in some increases the compensation by way
of punishment to the wrongdoer.    In this case, the failure of title
arose from an honest mistake.    It is true the mistake as between
these parties originated with the plaintiffs, but not from any laches
of the usual precaution on their part.    They employed Jacob
Brown, an experienced surveyor, to retrace and re-mark the lines

[Young *v.* Lloyd.]

of the survey, and had no reason to doubt their correctness. They have received nothing and ask nothing for the logs cut outside of their actual boundary. Certainly there is nothing in the case which should render them obnoxious to punishment as wrongdoers. On the other hand, there is nothing in the cause which would entitle the defendants to more than compensation for any actual loss in consequence of this mistake. No loss or diminution of profits, nor remote or speculative damages, should enter into the compensation. We have no other evidence of the value of this timber than that afforded by the contract-price of two dollars per thousand at the stump, and the amount of the verdict in the action of replevin. What estimate the jury may have put upon the stumpage in November 1867, the risks of floating to the boom, &c., &c., we have no means of knowing. But we have the right to presume that the jury did their duty in deducting from the value of the logs, however estimated, all the expense put upon them by the defendants. Such were their instructions, such was the law, and such is, therefore, a legal inference.

" The excess for which the verdict was rendered would, therefore consist of the nature of the stumpage, the risks of transportation and the value which happened to rule the market for lumber of logs at the Susquehanna Boom at the time these logs were replevied. The defendants had paid no stumpage—they had lost nothing by the risks of transportation in this case, for the measurement was taken at the boom. They retained the logs and had the advantages of the market value of lumber at the time. [For what loss then are they entitled to compensation which has not already been fully compensated ?

" They have been reimbursed for all the expense put upon these logs from the stump to the boom, leaving only a possible, perhaps a probable diminution of their profits unprovided for. Such a contingency, if clearly shown to exist, would be too remote and uncertain to be included in compensatory damages. Such a liability could not reasonably be presumed to have been in the contemplation of the parties when this contract was made, and ought not therefore to be implied. The disastrous results of such a liability to the present plaintiffs. demonstrates its unreasonableness. The defendants have cut and taken from the land of the plaintiffs about two and a half million feet of logs, about which there has been neither hindrance nor dispute. They now propose to pay the stumpage upon these logs, amounting to some $5000, and bring the plaintiffs in their debt some $3000, upon an alleged diminution of profits upon another million feet, which was the subject of the action of replevin. At least such only is the character and merits of this defence in our estimation. But the defendants claim that they are entitled to a set-off in this action at least, for the expense incurred upon these logs under the contract up to the time they

[Young v. Lloyd.]

were notified of the claim of Herdic, Lentz & Whites, which they claim to have shown was about $5 per thousand.  If, when notified of this claim, they had surrendered their contract, with all its fruits, to the plaintiffs, such a demand would have been just and reasonable, but they elected to hold the contract and defend their rights under it.  They retained the logs when replevied, and were subsequently allowed by the jury, as we have before stated, not only this expense of $5 per thousand, but all the expense incurred in placing the logs in the boom.

" The only remaining item of defence to be considered is the costs in the action of replevin.  That action seems to have been mutually defended by the parties, and to have been deemed necessary for the purpose of determining their rights.  We, therefore, instruct you to deduct these costs, with interest, since the time of their payment from the plaintiffs' claim, and render a verdict for the plaintiffs for the balance.]"

The verdict was for the plaintiffs for $4333.34.  The defendants took a writ of error and assigned the portion of the charge in brackets for error.

*W. H. Armstrong* and *S. Linn*, for plaintiffs in error.—The agreement was a sale of chattel interest and the measure of damages is that applying to the sale of chattels: Chitty on Contracts 301, 302 and notes; 1 Greenleaf on Evidence, § 270; Rob. on Frauds, § 236; Pars. on Cont. 312, 313; Douglas *v.* Shumway, 13 Gray 498; Nettleton *v.* Sikes, 8 Metc. 34; Harbold *v.* Kuster, 8 Wright 392; Backenstoss *v.* Stahler, 9 Casey 251; Whitemarsh *v.* Walker, 1 Metc. 312; Claplin *v.* Carpenter, 4 Id. 580; Yeakle *v.* Jacob, 9 Casey 376; Huff *v.* McCauley, 3 P. F. Smith 206.  In such contract there is an implied warranty of title: Dorsey *v.* Jackman, 1 S. & R. 42; McCabe *v.* Moorehead, 1 W. & S. 513.  The damages are consequential, but not speculative: Strong on Sales 577, § 454; Sedgwick on Damages 73, 260, 308; Davis *v.* Shields, 24 Wend. 322; 1 Domat's Civil Law 199, 233; Hibbard *v.* Johnson, 19 Johns. 77.

*C. Lloyd*, defendant in error, P. P.—There can be no damages for loss of prospective profits: Hertzog *v.* Hertzog, 10 Casey 426; Armstrong *v.* Percy, 5 Wendell 535.

The opinion of the court was delivered, April 4th 1870, by

AGNEW, J.—The court below having held that an implied warranty of title attached to the sale of the growing timber, the plaintiff in error can only complain of the measure of damages allowed him.  The Lloyds sold to Young, Finley & Co. all the white-pine timber growing on tract No. 5281, designating particularly a marked line as the southern boundary of the tract.

[Young *v.* Lloyd.]

Young & Co. cut the timber up to this line, and were notified by Herdic and others, the adjoining owners, that they had cut over the true line. The logs were brought to the boom at Williamsport, and there were replevied by Herdic & Co. Young & Co., at the request of Lloyd, gave bond and retained the logs. A verdict passed for Herdic & Co. in the replevin, and the record was brought into this court on a writ of error, as to the true measure of damages. We held, that the trespass having been committed under an honest mistake of title, the proper measure of damages was the value of the logs at the boom at the time of replevying, deducting all that it had cost Young & Co. to cut, haul and drive the logs to the boom : 5 P. F. Smith 176. The effect of this was to give to the owners of the timber its market price when replevied, including all the advantages incident to the ownership; and yet to allow to the inadvertent wrongdoer, all the outlays expended in giving value to the property before it reached the boom. The case went back and was retried on these principles, and a verdict rendered for $7351.75. The plaintiffs in error gave this recovery in evidence, and claim the amount of the verdict, less the price of stumpage, as their damages under the implied warranty of the title to the growing timber. This sum of $7351.75 represents the value of the timber at the boom, less the expenses of Young & Co. of cutting and getting it there; and therefore consists of two elements of value, to wit : the stumpage or price of the growing timber, and the increased market price by being at the boom. Young & Co. having paid nothing to Lloyd for the stumpage, it is admitted this element is no part of the damage sustained. But they claim the remainder as a profit to which they were entitled as they say under the contract. The contract therefore must govern. It was a sale of standing timber, to be cut and taken on the ground where it stood, at a measurement to be made there before removal. The land therefore was the place of delivery, and not the boom. The loss would be the expense incurred by Young & Co., and any additional value the timber might be shown to have at the place of delivery, beyond the contract price. But Young & Co. having been compensated for all their expenses in the deduction made in the verdict from the price of the logs at the boom; and having given no evidence of any advanced price at the place of delivery, it is evident could recover nothing more than the expenses incurred in defending the action of replevin at the instance of Lloyd. The costs were allowed, and it does not appear that any evidence of other expenses was given. Profits therefore do not seem to fall within the contemplation of the contract. A contract to deliver growing timber trees on the land, to be cut and taken away by the purchaser, cannot be said to have in view the price of a distant market. It would be giving it an unreasonable scope to say that the damages could be measured by the price at

[Young v. Lloyd.]

any market to which the purchaser might choose to take the logs. The standard would fluctuate with his choice of a market. There being nothing on the face of the contract to indicate an intention to make the boom at Williamsport the destination of the logs, the loss by a failure of title must be measured by the increased price, if any, at the place of delivery, and the expenses incurred on the faith of the contract. Having retained the logs, Young & Co. have lost nothing in the verdict, which represents only the market price at the boom, after their expenses had been refunded.

We perceive no error in the ruling of the judge in the court below, and the judgment is therefore affirmed.